1  IRAKLI KARBELASHVILI, Esq. (SBN 302971)
   ALL ACCESS LAW GROUP
2  1400 Coleman Ave Ste F28
3  Santa Clara, CA 95050
   Telephone: (408) 295-0137
4  Fax: (408) 295-0142
5  irakli@allaccesslawgroup.com

6  Attorneys for Plaintiff JAMES ALGER

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 | JAMES ALGER,                        )  **Case No.** 25-cv-9596
12 |                                      )
   |                   Plaintiff,         )  ***Civil Rights***
13 |        vs.                           )
   |                                      )  **COMPLAINT FOR**
14 |                                      )  **INJUNCTIVE AND**
15 | WEST COAST LODGING, L.P., a          )  **DECLARATORY RELIEF**
   | Colorado limited partnership; and    )
16 | STONEBRIDGE HOSPITALITY              )
   | ASSOCIATES, LLC, a Colorado          )
17 | limited liability company,           )
18 |                                      )
   |                   Defendants         )
19 |                                      )

20

21

22

23

24

25

26

27

        COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
                              1

1  JAMES ALGER ("Plaintiff") complains of WEST COAST LODGING,

2  L.P., a Colorado limited partnership; and STONEBRIDGE HOSPITALITY

3  ASSOCIATES, LLC, a Colorado limited liability company (collectively,

4  "Defendants") as follows:

5  **INTRODUCTION**

6  1.    This is a civil rights action involving the lack of disabled access to the

7  building, structure, facility, complex, property, land, development, and/or business

8  complex known as "Homewood Suites by Hilton - Anaheim - Main Gate Area" at

9  12005 Harbor Blvd., Garden Grove, CA, 92840 ("Hotel") in violation of Title III

10  of the Americans with Disabilities Act of 1990 ("ADA"). Defendants denied

11  Plaintiff, a person with a disability who uses a wheelchair or scooter for mobility

12  ("Wheelchair"), full and equal access to the Hotel because of multiple barriers,

13  including, but not limited to, inoperable doors, noncompliant loading zone, uneven

14  pavement, an inaccessible room, and chair lifts at the pool and spa ("Aquatic

15  Facilities") that were inoperable. Plaintiff faced these accessibility barriers

16  personally during his two paid visits to the Hotel: June 28 – June 29, 2025 and July

17  19 – July 20, 2025.[1]

18  2.    Defendants' failure to provide accessible features and amenities that are

19  provided to non-disabled guests contravenes the "full and equal" access mandate of

20  Title III of the Americans with Disabilities Act of 1990. Thus, Plaintiff has faced

21  repeated barriers to accessing the full and equal services of the Hotel, leading to

22  experiences of embarrassment and humiliation. Plaintiff seeks injunctive relief to

23  ensure full and equal access. Plaintiff is also seeking a declaratory judgment and

24  the reimbursement of reasonable statutory attorney's fees, litigation expenses, and

25  costs, as provided for by federal statutes.

26  
27  [1] The June 28 visit was paid for using 60,000 points from Plaintiff's Hilton Honors account.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
2

**JURISDICTION AND VENUE**

3.    Plaintiff brings this action as a private attorney general pursuant to 42 U.S.C. § 12188 and 28 C.F.R. § 36.501(a), having been personally subjected to discrimination on the basis of his disability. These provisions expressly authorize private individuals to seek injunctive relief to enforce the public rights guaranteed under Title III of the Americans with Disabilities Act.

4.    This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq*.

5.    Venue is proper in this court under 28 U.S.C. § 1391(b) and is founded on the fact that the real property that is the subject of this action is in this District and that Plaintiff's causes of action arose in this District.

**PARTIES**

6.    Plaintiff lives with a progressive peripheral neuropathy, a physical impairment that damages the peripheral nerves. The deterioration from this condition advanced rapidly due to a work related back injury. As a result, he experiences profound and progressive weakness and numbness in his hands, arms, legs, and feet, which substantially limits major life activities such as walking and performing tasks that require fine motor control. To maintain mobility, Plaintiff primarily uses a wheelchair or motorized scooter and drives a vehicle equipped with hand controls. He also relies on access to Aquatic Facilities as part of his ongoing pain management and physical therapy routine. Plaintiff has held a permanent disabled parking placard issued by the State of California since approximately 1994 and resides in Porter Ranch, California.

7.    Defendants are, and at all relevant times were the owners, operators, lessors, and/or lessees of the subject business, property, and buildings relevant to this Complaint.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

8.    Defendants failed to implement and maintain adequate policies, practices, and procedures necessary to ensure that their facilities, products, and services were readily accessible to individuals with physical disabilities, including Plaintiff. This lack of proactive compliance with federal accessibility laws directly contributed to the barriers, ongoing issues, and harms described in this complaint.

9.    Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of here. All actions alleged here were done with the knowledge, consent, approval, and ratification of each of Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

10.    Plaintiff experienced discrimination as a result of Defendants' failure to ensure that the Hotel's amenities and policies comply with the requirements of the ADA. Defendants have not provided individuals with disabilities—including Plaintiff—with full, equal, and independent access to the same services, benefits, and accommodations offered to nondisabled guests.

11.    The Hotel and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms, pool and spa are each a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7).

12.    On information and belief, the Hotel and its facilities have, since January 26, 1993, undergone construction, alterations, structural repairs, and/or additions,

subjecting the facility to disabled-access requirements of § 303 of the ADA (42 U.S.C. § 12183). Namely, based on publicly available information, the Hotel was constructed in 1999.

13.     Irrespective of Hotel's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

14.     Plaintiff holds premium memberships in multiple hotel loyalty programs, including Hilton Honors where he currently enjoys his 3rd year of Diamond status, the highest level available in the Hilton loyalty program. Plaintiff often lodges at hotels for a multitude of reasons, with an average of well over 75 stays annually for nearly a decade.[2]

15.     Plaintiff holds annual passes to multiple theme parks and attractions, including Disneyland where he holds an "Inspire Key" annual pass, Disney's top-tier Magic Key pass, which provides access to both Disneyland Park and Disney's California Adventure Park on most days.

16.     Plaintiff had scheduled a two-day visit to Disneyland on June 28 and 29, 2025. As he has done on many prior occasions when visiting the area, Plaintiff booked an overnight hotel stay near the park to accommodate the physical demands of such an outing. The journey from his home in Porter Ranch, California, can easily take two hours or more in Los Angeles traffic, and returning home after a full day at the park is neither practical nor medically advisable. Due to his disability, Plaintiff experiences occasional back flare-ups that may require rest, medication, the use of a heating pad, or access to a spa for pain relief. Staying

---

[2] For clarity, when averaging total stays over the last eight years, which is as far back as Plaintiff has data, it equals approximately 178 stays per year with one hotel chain alone. His current average in recent years is above seventy-five stays annually. As of the filing of this complaint, he has stayed at hotels fifty-eight nights this year.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  locally ensures that he can begin the day early, remain on-site as long as he would

2  like, and have a nearby place to recover, if necessary, without having to add in

3  hours of buffer for the return trip.

4  17.    Plaintiff's disability requires lodging accommodations that include standard

5  accessibility features such as a roll-in shower or an accessible bathtub equipped

6  with a compliant transfer seat, adequate clearance between furnishings to permit

7  safe navigation using a mobility device, grab bars positioned near the toilet and

8  bathing fixtures, a bed of appropriate height for safe transfer, and other established

9  elements of accessible design. Access to a properly functioning lift at the hotel's

10 Aquatic Facilities is also essential to ensure equal enjoyment of amenities. These

11 are not luxuries but baseline requirements necessary for Plaintiff to safely and

12 independently access the accommodations and facilities routinely provided to

13 nondisabled guests.

14 18.    On June 28, 2025, Plaintiff arrived at the Hotel and observed what appeared

15 to be a loading/unloading drop off area at the front entrance lacked a compliant

16 access aisle.

17

18

19

20

21

22

23

24

25

26

27

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   19.    For Wheelchair users like Plaintiff, a properly marked and protected area for

18   loading and unloading is essential for safety and independence. As he has had bad

19   experiences in active driveways in the past, the absence of such a feature forced

20   Plaintiff to continue around the building in search of compliant access.

21   20.    On the side of the building, Plaintiff located a marked disabled parking

22   space, but that space lacked upright signage.

23
24
25
26
27

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    21.    Though relatively minor in isolation, these early access issues often

22 foreshadow deeper problems. Unfortunately, that was the case here.

23    22.    Upon parking near what appeared to be a side entrance, Plaintiff found that

24 the exterior door adjacent to his designated accessible parking space was locked,

25 forcing him to locate an alternative entry point to the hotel. There was no

26 directional signage indicating the location of an accessible entrance. As Plaintiff

27 navigated the perimeter of the property, he encountered several barriers, including

locked gates, exterior doors inaccessible from the outside, and multiple curbs lacking curb cuts. One designated accessible parking space had an improperly configured access aisle, with one portion abutting a curb and another served by a curb cut.



23.    Although the surrounding pavement was generally intact, uneven surfaces in several areas created additional navigation difficulties.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22    24.    After encountering multiple dead ends and without any clear path forward,

23    Plaintiff was forced to enter the vehicle driveway and circle the building through

24    the parking lot in order to access the hotel through the front entrance.

25    25.    Upon entering the main entrance, Plaintiff was directed to a check-in counter

26    that was too high to be accessible. A lower counter with a card reader was nearby

27    but was already being used by other guests. Staff did not offer to wait for or use

that counter, nor did they provide any alternative accommodation.

26.     Plaintiff was assigned room 203, a designated mobility accessible room.

27.     Upon entering, Plaintiff immediately encountered difficulty with the suite door. The automatic door closer caused the door to shut too quickly, offering little time for safe entry while maneuvering his mobility device. The force required to open the door felt excessive, and the door began to close immediately. This created an unnecessary physical hazard.

28.     In the main living area, Plaintiff found that the thermostat was entirely out of reach. While it appeared to be originally mounted at an accessible height, its placement behind a large dresser and lamp rendered it functionally unusable. Plaintiff was unable to approach or operate it without moving furniture, something he cannot safely do due to his mobility limitations.

29.     Upon entering the bedroom area of the suite, Plaintiff found that there was not enough room to move his scooter between the bed and the opposite furniture unit containing the television. Because his legs naturally rest in an open position due to muscle atrophy, navigating tight spaces in his scooter is especially difficult. The limited clearance increased the risk that his knees would strike nearby furniture, creating discomfort and potential injury. The lack of sufficient space forced Plaintiff to maneuver awkwardly and at personal risk, despite the room being designated as accessible.

30.     When Plaintiff attempted to use the bathtub, he quickly discovered that it was not usable due to multiple accessibility failures. The tub was equipped with only a single grab bar, located on the wall with the faucet and showerhead. Critically, the longer rear wall, which would be essential for a safe lateral support, had no grab bar at all, making entry and exit unsafe.

31.    No shower seat was provided, either fixed or portable, even though this was a standard tub rather than a transfer type unit. Without a seat, Plaintiff had no safe method of bathing, as he cannot stand, unassisted or lower himself to the tub floor. Adding to the difficulty, the soap and shampoo dispensers were mounted well above reach range and could not be accessed from the seated or stable position.

32.    As a result of these combined barriers, Plaintiff was unable to use the tub or shower during his stay. This was especially disappointing, given that the room had been reserved as an accessible, accommodation and confirmed as such. What should have been a basic amenity instead became a source of frustration, discomfort, and exclusion.



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
13

1

2   33.     While the bathroom contained significant accessibility barriers, even smaller

3   details reflected a broader pattern of noncompliance. The piping beneath the sink

4   was left exposed and uninsulated, creating a potential burn hazard for individuals

5   with limited sensation or mobility who require wheelchair access beneath the

6   basin, individuals like Plaintiff. A towel hook mounted near the bathtub was also

7   positioned above safe reach range, rendering it unusable from a seated or stable

8   position. When these barriers are viewed in conjunction with the more serious

9   violations present throughout the property, they illustrate a pervasive failure to

10  meet minimum accessibility standards, particularly troubling given how easily and

11  inexpensively such issues could be corrected.

12  34.     Plaintiff had hoped to use the spa that evening to alleviate significant

13  soreness and muscle tension following a long day navigating in his mobility

14  device, a form of light hydrotherapy he often relies on during travel. Although both

15  the pool and the spa were available and in use by other guests, Plaintiff specifically

16  preferred the spa for its therapeutic benefits. Upon arriving at the Aquatic

17  Facilities, however, it became immediately apparent that neither the pool nor the

18  spa lifts were operable. Both were missing the necessary batteries, rendering them

19  entirely unusable.

20

21

22

23

24

25

26

27

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF
14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



35.      This did not appear to be the result of mechanical failure, but rather a lapse in policy, oversight, or staff training. Requiring a guest with a disability to first discover that the lift is unusable, then locate staff, request assistance, and wait for the equipment to be made functional, if it can be at all, defeats the purpose of accessible design and turns the promise of equality into a scavenger hunt.

36.      Recognizing the all-too-familiar pattern, Plaintiff did not pursue further attempts to use the Aquatic Facilities. This has become an almost universal issue with hotels. In fact, the entire reason Plaintiff was at this hotel in the first place was

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  because he was deterred from staying at another one close by that had similar

2  issues. Yet again, what should have been a simple and restorative experience

3  instead served as a frustrating reminder that nominal compliance means little when

4  it is undermined by inaction and indifference.

5  37.     Upon attempting to settle in for the night, Plaintiff discovered that he could

6  not independently close the blackout curtains in the bedroom. The drapery wand,

7  used to operate the curtains, was mounted above accessible reach range, rendering

8  it effectively unusable to someone seated in a mobility device.

9  38.     While returning from the pool area the day prior, Plaintiff noted that none of

10  the tables in the hotel's designated dining area provided adequate clearance under

11  the tables for wheelchair users. Though breakfast was technically available the

12  following morning, Plaintiff did not even attempt to partake, having already

13  observed that the setup excluded him entirely.

14  39.     Plaintiff's next stay at the Hotel occurred from July 19 to July 20, 2025.

15  Despite the barriers previously encountered, Plaintiff chose to give the Hotel

16  another chance, hoping that at the very least, some of the easily remediable issues

17  had been isolated incidents or had since been corrected. While he did not expect

18  major repairs such as repaving the parking lot or making structural modifications

19  within a month, he reasonably anticipated that the aquatic lifts would be

20  operational.

21  40.     On July 19, 2025, Plaintiff was returning to Southern California from a brief

22  trip to Central California and stopped at Harris Ranch for lunch. As is his long-

23  standing practice, he planned to stay at the Hotel the night before visiting

24  Disneyland to position himself nearby and minimize travel strain the following

25  day.

26  41.     Plaintiff notified the Hotel in advance that he would be arriving late due to

27  the need for periodic breaks to manage chronic back pain. Although he initially

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

17

expected to arrive much later, he ultimately checked in around 11:00 p.m., intending to have a relaxing evening, use the pool or spa before check-out, and begin the next day with minimal discomfort.

42.   Unfortunately, the check-in process immediately confirmed that the Hotel's accessibility issues were not isolated or coincidental. One staff member was stationed at the accessible check-in terminal, yet instead of assisting Plaintiff, that employee summoned another staff member from the back office. The second employee then directed Plaintiff to the higher, non-accessible counter.

43.   The following morning, Plaintiff again discovered that neither the pool nor spa lift had functioning batteries, rendering both aquatic amenities inaccessible, just as they had been during his previous visit. This was only one of several accessibility barriers that remained unaddressed.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    44.    The following barriers present during Plaintiff's June 28–29 visit were still

18    present as of July 20, 2025:

19    • No accessible loading zone at the hotel entrance.

20    • Faded or missing signage on designated accessible parking spaces.

21    • Lack of a compliant path of travel from parking to the entrance, forcing

22      guests to circle the building due to locked exterior doors.

23    • Failure to use the accessible check-in counter, despite its availability; staff

24      instead directed Plaintiff to a higher, inaccessible counter.

25    • No accessible seating in the breakfast/dining area or outdoor patio due to

26      lack of adequate clearance under the table.

27

- Non-functional aquatic lifts for both the pool and spa. The battery packs were missing entirely, and the lift terminals were visibly rusted, suggesting long-term neglect. Without power, the lifts were completely unusable, with no indication that they would operate even if batteries were reinstalled.

45.    These individual barriers to access are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant.

46.    Plaintiff has every intention of returning to the Anaheim area and to Disneyland specifically, a location he frequents often and to which he maintains annual access credentials. However, as a direct result of the barriers encountered during his most recent stay, Plaintiff is presently deterred from returning to this particular Hotel and will remain so unless and the property has been brought into compliance with the ADA. Plaintiff will return and stay at the Hotel once access is provided.

47.    Plaintiff alleges that it would be a futile gesture to attempt future visits while these barriers remain unremedied, but he anticipates that continued or attempted visits to the area will occur regularly following the filing of this Complaint. Accordingly, Plaintiff reserves the right to supplement this Complaint at the time of trial to address any subsequent events or instances of deterrence according to proof.

48.    Defendants were aware or reasonably should have been aware, that certain aspects of their establishment and their policies made the Hotel inaccessible, constituting a violation of federal laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendants possess the necessary financial means to eliminate these obstacles and make the Hotel accessible to people with physical disabilities. But Defendants have not taken action to remove these barriers or to ensure full and equal access to the facility.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

49.     Because of Defendants' conduct, including their omissions and their failure to ensure access for the disabled, Plaintiff has experienced a violation of his civil rights, emotional distress, and infringement of his right to full and equal enjoyment of public facilities. Each instance of denied access has subjected Plaintiff to difficulties, discomfort, and humiliation. Plaintiff has thus had to seek legal counsel and is now claiming statutory attorney's fees, litigation expenses, and costs, as provided for under federal and state law.

50.     Plaintiff's goal in this suit is to make the Hotel fully accessible to persons with similar mobility disabilities.

## CLAIM:

## VIOLATION OF THE ADA, TITLE III

## [42 U.S.C. §§ 12101 et seq.]

51.     Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

52.     Plaintiff was at all times relevant here a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

53.     Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to access and use the subject facilities.

54.     The subject property and facility are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. § 12181(7).

55.     The acts and omissions of Defendants set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated under it.

56.     Plaintiff alleges on information and belief that the Hotel was designed and constructed (or both) after January 26, 1993 -- independently triggering access

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1   requirements under Title III of the ADA.

2   57.    Here, Defendants violated the ADA by designing or constructing (or both)

3   the Hotel in a manner that did not comply with federal disability access standards

4   even though it was practicable to do so.

5   58.    The removal of each barrier identified by Plaintiff was, at all relevant times,

6   readily achievable. Providing accessible parking, loading zones, guest rooms,

7   swimming pool and spa facilities, and accessible dining tables are fundamental

8   requirements for ensuring equal access. Without these features, Plaintiff cannot

9   fully and equally enjoy the goods, services, and accommodations offered at the

10  Hotel. The cost of removing these barriers is minimal compared to the benefit of

11  providing access which represents a basic legal obligation of operating a public

12  accommodation. The barriers described in this complaint are among those the

13  Department of Justice has specifically recognized as being presumptively readily

14  achievable to remove.

15  59.    Defendants have discriminated against Plaintiff in violation of Title III of the

16  ADA by: (a) providing benefits that are unequal to that afforded to people without

17  disabilities; (b) failing to make reasonable modifications in policies, practices, or

18  procedures when such modifications are necessary to afford (and would not

19  fundamentally alter the nature of) the goods, services, facilities, privileges,

20  advantages, or accommodations of the Hotel to individuals with disabilities; (c)

21  failing to remove architectural barriers in existing facilities where such removal is

22  readily achievable; and (d) where Defendants can demonstrate the removal of

23  architectural barriers is not readily achievable, failing to make the goods, services,

24  facilities, privileges, advantages, or accommodations of the Hotel available

25  through alternative methods if such methods are readily achievable. On

26  information and belief, as of the date of Plaintiff's most recent visit to the Hotel

27  and as of the filing of this Complaint, the subject premises have denied and

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1  continue to deny full and equal access to Plaintiff and to other similarly mobility

2  disabled persons in other respects, which violate Plaintiff's rights to full and equal

3  access and which discriminate against him on the basis of his disability, thus

4  wrongfully denying him the full and equal enjoyment of the goods, services,

5  facilities, privileges, advantages and accommodations, in violation of §§ 12182 and

6  12183 of the ADA.

7  60.    Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies

8  and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C.

9  2000(a)-3(a), as he is being subjected to discrimination based on disability in

10  violation of the ADA or has reasonable grounds for believing that he is about to be

11  subjected to discrimination.

12  61.    Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights

13  Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

14      WHEREFORE, Plaintiff requests relief as outlined below.

15

16              **PRAYER FOR RELIEF:**

17      Plaintiff prays that this Court:

18  1.    Issue a preliminary and permanent injunction compelling Defendants, in

19  their capacities as the current owners, operators, lessors, and/or lessees of the

20  subject property, premises, and related facilities, to undertake such modifications

21  as are necessary to bring said property, premises, and facilities into compliance

22  with applicable accessibility requirements so as to provide full and equal access to

23  individuals with physical disabilities; and further enjoining Defendants to provide,

24  maintain, and operate said facilities in a condition that ensures ongoing usability by

25  Plaintiff and all similarly situated persons with disabilities, as mandated by law.

26  2.    Declare that Defendants' actions and omissions described herein violate

27  Title III of the ADA.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

3.    Retain jurisdiction over the Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public accommodations as complained of herein no longer occur, and cannot recur;

4.    Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law; and

5.    Grant such other and further relief as this Court may deem just and proper

Date: October 7, 2025                                          ALLACCESS LAW GROUP


                                        _____/s/ Irakli Karbelashvili_____
                                        By IRAKLI KARBELASHVILI, Esq.
                                        Attorney for Plaintiff
                                        JAMES ALGER

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF